No. 20-3779

# United States Court of Appeals
# for the Sixth Circuit

———————————

MAGNESIUM MACHINE, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY;
MAGNESIUM HOLDINGS, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY;
PARAMOUNT DESIGN, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY

*Plaintiffs-Appellants,*

v.

TERVES, LLC, A NEVADA LIMITED LIABILITY COMPANY;
MCDONALD HOPKINS, LLC, AN OHIO LIMITED LIABILITY COMPANY

*Defendants-Appellees,*

———————————

On Appeal from the U.S. District Court for the N.D. of Ohio
Case No. 1:19-cv-02818, Judge Donald Nugent

———————————

## TERVES, LLC'S APPELLEE BRIEF
———————————

David B. Cupar
Matthew J. Cavanagh
MCDONALD HOPKINS LLC
600 Superior Ave., East, Ste. 2100          **[PUBLIC VERSION]**
Cleveland, Ohio 44114
t 216.348.5400 │ f 216.348.5474

*Counsel for Defendant-Appellee*
*Terves, LLC*

<u>Disclosure of Corporate Affiliations and Financial Interest</u>

In accordance with Sixth Circuit Rule 26.1, counsel for appellee Terves, LLC makes the following disclosure:

1.    Is the party a subsidiary or affiliate of a publicly owned corporation?

    <u>No</u>

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    <u>No</u>

Dated:  November 18, 2020          <u> s/ Matthew J. Cavanagh      </u>
*Counsel for Terves, LLC*

# Table of Contents

Corporate Disclosure Statement ......................................................... i

Table of Authorities ....................................................................... v

Oral Argument Statement ............................................................... 1

Jurisdictional Statement ................................................................. 3

Statement of the Issues .................................................................. 4

Statement of the Case .................................................................... 6

   I.  Terves' Response to MMP's Statement of the Case ................................. 6

   II. Terves' Statement of the Case ................................................... 8

      A. Terves sues for patent infringement ................................. 8

      B. Terves subpoenas Bradley ............................................. 9

      C. Terves subpoenas MMP.................................................. 11

      D. The parties meet-and-confer over MMP's objections..................... 12

      E. MMP secretly sues and obtains a seizure order .............................. 14

      F. The district court vacates the seizure order ..................................... 16

      G. The district court issues written orders
         dissolving the seizure order ........................................................ 20

      H. The district court dismisses MMP's suit. ......................................... 22

      I.  The district court awards attorneys' fees ........................................ 22

Summary of Argument ................................................................... 25

Argument ....................................................................................... 26

   I.  This Court should affirm dismissal ........................................... 26

      A. Standard of Review..................................................... 26

      B. Rule 12(b)(6) Legal Standard......................................... 26

      C. Dismissal is especially appropriate here........................... 27

D. This Court should affirm dismissal
on any of three separate grounds ..................................................29

   1. MMP's allegation ████████████
██████████ a trade secret is implausible ...........................29

   2. MMP failed to allege a misappropriation by Terves ..................34

      a. MMP does not allege misappropriation by "disclosure"
against Terves .......................................................................35

      b. MMP does not allege misappropriation by "use"..................36

      c. MMP has not plausibly alleged a
misappropriation by "acquisition".........................................37

         i. MMP has not pleaded acquisition by improper means....37

        ii. MMP's L.P.R. 2.2 arguments are incorrect........................39

        iii. MMP's reading of L.P.R. 2.2 is incorrect.......................... 40

        iv. LPR 2.2 does not support this lawsuit,
no matter how it is read......................................................45

         v. MMP's second "owed a duty" argument
misses the mark ................................................................. 46

        vi. MMP's new "misrepresentation" argument
is meritless and waived......................................................47

   3. This Court should affirm dismissal on a
third ground: the litigation privilege.........................................49

      a. Litigation conduct is immune against tort liability.............. 49

      b. The *Stork-Werkspoor Diesel* case explains
why one cannot sue a party for obtaining evidence
that is allegedly trade secret...................................................50

      c. Ohio's litigation privilege bars the Ohio claim ....................52

      d. Oklahoma's litigation privilege bars the Oklahoma claim....53

      e. The federal litigation privilege bars the DTSA claim............54

    i.   Federal common law recognizes a litigation privilege......54

    ii.  The federal litigation privilege bars the DTSA claims......56

    iii. MMP's caselaw is distinguishable......................................59

II. The Court should either affirm or not reach the
district court's order dissolving the seizure order .................................. 61

A. Standard of Review ............................................................................. 61

B. This Court should affirm the dissolution of the seizure order ..........62

    1.  MMP's evidentiary burden at hearing ...........................................62

    2.  This Court should affirm on both
    grounds cited by the district court.................................................62

        a.  The district court correctly ruled that
        MMP failed to prove the balance
        of harms, § 1836(b)(2)(A)(ii)(III) .............................................63

        b.  The district court correctly ruled that MMP
        failed to prove that Terves used or conspired
        to use "improper means" ....................................................... 64

    3.  The Court may also affirm on three additional
    grounds supported by the record..................................................65

III. MMP's fourth appeal issue is not valid ................................................. 66

Conclusion...................................................................................................... 68

Certificate of Compliance................................................................................ 69

Designation of Relevant Documents ...............................................................70

Appendix A (Correlation Table) ...................................................................... 71

Certificate of Service ......................................................................................72

# Table of Authorities

**Page(s)**

## Cases

*Accent Pkg., Inc. v. Leggett & Platt, Inc.,*
707 F.3d 1318 (Fed. Cir. 2013) ........................................................31

*Am. Chem. Soc. v. Leadscope, Inc.,*
133 Ohio St. 3d 366 (2012) ...............................................................28

*Angel v. Kentucky,*
314 F.3d 262 (6th Cir. 2002) ...........................................................29

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ...................................................................... 26-27

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................................26

*Brisco v. LaHue,*
460 U.S. 325 (1983) ...........................................................................50

*Carras v. Williams,*
807 F.2d 1286 (6th Cir. 1986) .................................................. 61 n.12

*Dombrowski v. Pfister,*
380 U.S. 479 (1965) ...........................................................................28

*George v. Youngstown State Univ.,*
966 F.3d 446 (6th Cir. 2020) ................................................... 43, 47

*Geovector Corp. v. Samsung Electronics Co. Ltd.,*
234 F. Supp. 3d 1009 (N.D. Cal. 2017) .........................................30

*Jackson v. BellSouth Telecommunications,*
372 F.3d 1250 (11th Cir. 2004) .......................................................53

*Jones v. City of Monroe,*
341 F.3d 474 (6th Cir. 2003) .......................................................... 61

*Knight v. Mooring Capital Fund, LLC,*
749 F.2d 1180 (10th Cir. 2014)........................................................53

*Leary v. Daeschner,*
228 F.3d 729 (6th Cir. 2000)...........................................................62

*Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v.*
*U.S. Fire Ins. Co.,*
639 So.2d 606 (Fla. 1994)............................................................. 49

*Lumpkins-El v. Dept. of Corrections,*
3 Fed. Appx. 401 (6th Cir. 2001) ...................................................67

*Mager v. Wisconsin Central Ltd.,*
924 F.3d 831 (6th Cir. 2019) ..........................................................38

*Merckle GmbH v. Johnson & Johnson,*
961 F. Supp. 721 (D.N.J. 1997) .....................................................59

*Mezibov v. Allen,*
411 F.3d 712 (6th Cir. 2005) ..........................................................27

*Murray Energy Holdings, Co. v. Bloomberg, L.P.,*
No. 2:15-cv-2845, 2016 WL 3355456 (S.D. Ohio June 17, 2016) ...................30

*Music Center S.N.C. v. Prestini Musical Instruments Corp.,*
874 F. Supp. 543 (E.D.N.Y. 1995)..................................................59

*New Wave Innovations, Inc. v. Greenberg,*
2015 WL 5118130 (S.D. Fla. Aug. 31, 2015) ................................... 60

*Nix v. O'Malley,*
160 F.3d 343 (6th Cir. 1998) ..........................................................57

*Packaging Corp. of Am., Inc. v. Croner,*
419 F. Supp. 3d 1059 (N.D. Ill. 2020) .............................................36

*Patel v. OMH Med. Center, Inc.,*
987 P.2d 1185 (Okl. 1999) ..............................................................53

*Prakash v. Altadis U.S.A. Inc.*,
   No. 5:10CV0033, 2012 WL 1109918 (N.D. Ohio Mar. 30, 2012) ....................54

*Reister v. Gardner*,
   149 N.E.3d 112 (Ohio App. 2019) ......................................................49, 52-53

*Rogers Corp. v. Arlon, Inc.*,
   855 F. Supp. 560 (D. Conn. 1994) ................................................................39

*Rosania v. Taco Bell of Am., Inc.*,
   303 F. Supp. 2d 878 (N.D. Ohio 2004) ........................................................54

*Silberg v. Anderson*,
   786 P.2d 365 (Cal. 1990) ............................................................................ 49

*Snyder v. AG Trucking, Inc.*,
   57 F.3d 484 (6th Cir. 1995) ..........................................................................38

*Sorensen v. Polukoff*,
   No. 2:18-CV-67 ...........................................................................................57

*Steffes v. Stepan Co.*,
   144 F.3d 1070 (7th Cir. 1998) ...............................................................55-57

*St. Louis Baptist Temple, Inc. v. Fed. Dep. Ins. Corp.*,
   605 F.2d 1169 (6th Cir. 1979) ...................................................................... 9

*Stork-Werkspoor Diesel V.V. v. Koek*,
   534 So.2d 983, 10 U.S.P.Q.2d 1249 (La. Ct. App. 1988).....................50-52, 56

*Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*,
   904 F.3d 1197 (11th Cir. 2018).....................................................................56

*Terves, LLC v. Yueyang Aerospace New Materials Co.*,
   No. 19-cv-01611-DCN ................................................................................. 8

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
   552 F.3d 430 (6th Cir. 2008) ........................................................................27

*Tumblebus Inc. v. Cranmer,*
  399 F.3d 754 (6th Cir. 2005) ........................................................ 61

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.,*
  587 F.3d 1339 (Fed. Cir. 2009) .................................................... 33

*Watermark Senior Living Retirement Communities, Inc. v.*
  *Morrison Mgmt. Specialists, Inc.,*
  905 F.3d 421 (6th Cir. 2018) ................................................ 27, 34

*Zirvi v. Flatley,*
  433 F. Supp. 3d 448 (S.D.N.Y. 2020) ......................................... 30

## Statutes

18 U.S.C. § 1836 ................................................................... *passim*

18 U.S.C. § 1839 ................................................................... *passim*

## Federal Rules

Fed. R. Civ. P. 12(b)(6) ................................................. 22, 26-27

Fed. R. Civ. P. 26(b)(1) ............................................................ 38

Fed. R. Civ. P. 45 .................................................................... 43

Fed. R. Civ. P. 65 .................................................................... 67

Fed. R. Civ. P. 71 .................................................................... 43

Fed. R. Evid. 408 .................................................................... 38

## Constitutions

1st Amendment, U.S. Constitution .....................................................................27

Article I, Section 16, Ohio Constitution ...................................................... 27-28

## Other

Anenson, T. Leigh, *Absolute Immunity from Civil Liability:*
    *Lessons for Litigation Lawyers,*
    31 Pepp. L. Rev. 915, 918 (2004) .....................................................................22

N.D. California, Standard Protective Order...............................................58 n.11

N.D. Illinois, Standard Protective Order....................................................58 n.11

N.D. Ohio, Local Patent Rule 2.2................................................................*passim*

N.Y. State Bar Ethics Op. 483...........................................................................50

## Oral Argument Statement

Appellee Terves, LLC agrees with appellants Magnesium Machine, LLC *et al.* ("MMP") that oral argument is unnecessary, but for different reasons. The undisputed facts, taken from MMP's complaint, the multiple exhibits to it, and the evidentiary hearing, confirm that MMP had no legal or factual basis to file and proceed with the underlying lawsuit, and the district court correctly dismissed it. The paper record confirms this reality, without the need for oral argument.

This facts below are not unusual, nor do they present an "issue of first impression." Despite MMP's exaggerations and unsupported allegations of "misrepresentations" and "cover-ups," this was a normal discovery dispute involving an objection to a subpoena response, where the alleged prejudice was resolved through the meet-and-confer process.

A company called Bradley Machine produced a settlement agreement to Terves in response to a lawful subpoena in a patent infringement lawsuit. Bradley produced the settlement without objection, without marking it subject to protective order, without mentioning any confidentiality concerns, and without restricting it in any way. MMP later objected that Bradley breached the settlement by producing it without first notifying

MMP. Within 48 hours of MMP's objection, Terves' counsel worked voluntarily with MMP's counsel to mitigate the alleged harm caused by Bradley Machine's alleged breach. Terves' counsel instructed the two Terves' employees that received the document to delete it, which they did, and he marked the document "Attorneys' Eyes Only" under Protective Order.

MMP provided no allegation in its complaint or evidence at hearing to dispute this simple fact pattern, it admits the facts are "undisputed" (Br. 4), and MMP does not—and cannot—allege that Terves has used the alleged trade secret or disclosed it to any third-parties. To the extent this appeal presents a "first impression" issue, it is only because MMP appears to be the first party in the history of U.S. jurisprudence to think it is a good idea to sue opposing counsel and its client over their receipt of an unrestricted subpoena response, followed by their voluntary and good faith meet-and-confer work to claw it back and get it under protective order.

The case is meritless. The Court should affirm dismissal without the expense and effort of oral argument.

## **Jurisdictional Statement**

Terves agrees with MMP's jurisdictional statement, except for MMP seeking appellate review of an alleged denial of "further injunctive relief." To the extent a temporary restraining order dissolved, denials of those orders are not reviewable, and MMP never moved for preliminary injunction.

## **Statement of the Issues**

1.     To state a trade secret claim, MMP needed to identify information misappropriated by Terves that could plausibly meet the statutory definition of "trade secret." Did MMP do so by alleging ███ ████████████████████████████████ buried in a 12-page settlement is trade secret when MMP says the term references an unpublished patent application that it admits was <u>not</u> disclosed to Terves, provides no allegations as to how Terves or its attorney would have known the reference to a "patent" was incorrect, and ████████████████████████████ ████████████████████████?

2.     MMP also needed to allege an act of "misappropriation" by Terves. MMP alleges only misappropriation by "acquisition" against Terves, as opposed to misappropriation by "disclosure or use." Did MMP allege misappropriation by acquisition against Terves, when only acquisitions "by improper means" are actionable, and MMP admits the alleged trade secret was acquired by lawful means, namely by lawful subpoena?

3.     The litigation privilege bars tort lawsuits against parties and their counsel for acts done in litigation, especially when the district court handling the litigation is capable of addressing the issue. Does the litigation

privilege bar MMP's lawsuit over Terves' receipt of an unrestricted subpoena response in a patent case where Terves deleted the alleged trade secret document and designated it as "Atttorneys' Eyes Only" under a Protective Order that is enforceable by the district court handling the patent case?

4.      To maintain an ex parte seizure order under the U.S. Defend Trade Secrets Act (DTSA), MMP needed to satisfy eight proof elements at hearing. Did MMP show the district court abused its discretion by vacating its seizure order when MMP did not satisfy at least five proof elements at hearing, and MMP's Brief does not show what hearing evidence carried its burden on elements that the district court specifically identified as lacking?

5.      By law, denials of temporary restraining orders ("TROs") are not appealable. The district court's ex parte seizure order contained a TRO that expired either when the district court vacated the seizure order or, by its own terms, "14 days" after entry. Can MMP appeal the dissolution or expiration of the TRO as if it were a denial of a preliminary injunction motion when MMP never moved for a preliminary injunction, and Terves never had an opportunity to be heard on the four preliminary injunction factors?

## Statement of the Case

I.      **Terves' Response to MMP's Statement of the Case.**

In its Statement of the Case, MMP repeats unsupported claims of "misrepresentations" "cover-ups," and "subterfuge" against Terves' attorney to create the appearance of wrongdoing. MMP uses a smear campaign because it has nothing else to support its outlandish claims.[1] Terves provides a statement of the case below with pinpoint citations to the record, and corrects two specific efforts by MMP to mislead in this subsection.

---

[1] Terves is trying to avoid the same rhetorical flourish as MMP. But "outlandish" understates MMP's theory that Terves' counsel saw ███████ █████████████████████████████ in a settlement produced without restriction, recognized the term as a valuable trade secret, emailed the settlement to his client so it could steal the idea, and then engaged in "cover-ups" and "misrepresentations" to keep the caper going (yet, at the same time, voluntarily telling MMP that he had given the document to his client and cooperating to claw it back). Such fanciful storytelling is what led the U.S. Supreme Court to instruct district courts to dismiss implausible claims in *Twombly* and *Iqbal*.

First, MMP confuses the timeline[2] and repeatedly suggests that Terves' counsel disclosed the Settlement <u>after</u> volunteering to quarantine it. (*See, e.g.*, MMP's Appellant Brief "Br." 6.) The true timeline debunks this. Indeed, MMP acknowledges elsewhere that Terves' counsel provided the Settlement to Terves' President, Andrew Sherman, on the day it was received, October 15, <u>before</u> anyone objected, and <u>before</u> Terves' counsel, appellee McDonald Hopkins ("MH"), volunteered to quarantine the document on November 6. (MMP's Opp. to Fee Mot., RE-63, PageID #1256 ("McDonald Hopkins shared that very same third-party discovery with Terves on October 15, 2019 (the same day it received it).") (citing Compl. ¶54 and Ex. P to Compl.); *see also infra* p.10-11.) Indeed, MMP insists the October 15 disclosure from attorney to client is the only act of misappropriation, and does not sue on what happened after the October 15 disclosure. (*See infra* p.35.)

Second, despite being sanctioned by the district court for using an "intentional exaggeration/misrepresentation of the alleged disclosure at

---

[2] Other examples of timeline confusion include: (a) stating MMP learned of Bradley's breach on November 24 (Br. 5), when the pleading says it learned of the breach a month earlier on October 25, 2019, (Compl. ¶36, RE-1, PageID #9), (b) stating Terves served MMP with a subpoena on "October 1, 2019" (Br. 14), when RE-1-9, PageID #72, confirms it was served on November 1, and (c) claiming the Settlement had been "surreptitiously maintained" for "six weeks" by Terves (Br. 6), when it is undisputed that Terves deleted the Settlement shortly after MMP's November 4 objection. (*See infra* p.12.)

issue," (*see infra* p.23-24), MMP does it again here. To avoid exposing the triviality of what was actually disclosed, MMP replaces the disclosure with a defined term: "MMP TRADE SECRET PRODUCTS AND METHODS" and gushes for pages about its greatness. But peeling back the redaction sticker from the settlement that MMP says discloses the secret exposes surprisingly little. MMP's hearing witness identified just ████████████████ ████████████████████████████████ Terves explains later the implausibility of this claim.

While MMP is astonished that the district court "completely reversed course," (Br. 4), there's good reason: the district court believed MMP's unsupported *ex parte* lawyer arguments and "reversed course" when it heard the evidence presented fairly from both sides. This is an indictment of MMP, not the district court.

## II. Terves' Statement of the Case.

### A. Terves sues for patent infringement.

This dispute began when Terves sued MMP's importer, Ecometal Inc., for patent infringement. *See Terves, LLC v. Yueyang Aerospace New Materials Co. et al.*, No. 19-cv-01611-DCN ("Patent Case"). The Court may take judicial

notice of the Patent Case and docket. *See St. Louis Baptist Temple, Inc. v. Fed. Dep. Ins. Corp.*, 605 F.2d 1169, 1172 (6th Cir. 1979).

There, Terves alleges that Ecometal infringes Terves' patents by importing from China magnesium materials used in the fracking industry. (*See* Terves' Compl. ¶¶2-3, RE-1, PageID #1-2.) Terves received samples of Ecometal's materials from MMP's inventory, confirmed they infringe, and moved for a preliminary injunction against Ecometal on May 1, 2020. (RE-31 in Patent Case.) If granted, that injunction would cutoff MMP's supply of infringing material from Ecometal.[3]

**B.    Terves subpoenas Bradley.**

In the Patent Case, Terves subpoenaed a company called Bradley Machine. (Subpoena, RE-1-3, PageID #35-41.) Terves notified Ecometal's counsel (who are the same attorneys representing MMP here) before serving the subpoena. (*Id.*, RE-1, PageID #34.) Terves subpoenaed Bradley because it believed, based on shipping records, that Ecometal was importing the

---

[3] With the Settlement deleted by Terves' employees and safely under Protective Order, Terves cannot help but suspect MMP is pursuing this lawsuit, and using heroic efforts to keep it alive, to disrupt Terves' efforts to enjoin MMP's supply of inexpensive infringing magnesium, especially when the same attorneys represent MMP and Ecometal. With the lawsuit pending, MMP is able to run up Terves' legal bills, exhaust its litigation resources, and distract Terves' and its counsel's focus away from the Patent Case.

accused magnesium to Bradley (Transcript of Dec. 19, 2019 Hearing ("Tr.") 35:16-36:3, RE-17, PageID #206-207.) The subpoena sought infringement evidence. (*See* Subpoena, RE-1-3, PageID #38-40.)

In response to the subpoena, Bradley's statutory agent, Mr. Stacy McCrackin, emailed to Terves' counsel, McDonald Hopkins ("MH"), a letter in which he stated that he had sold his share of the business to MMP and everything that Bradley had subject to the subpoena was "handed over to Magnesium Machine LLC." (Subpoena Response, RE-1-8, PageID #58.) McCrackin produced a copy of a settlement agreement between MMP and Bradley (the "Settlement") to prove that he sold his shares in the business to MMP. (*Id.*) The Settlement was not signed by MMP. (*Id.*, PageID #66.) Bradley produced the Settlement without restriction; it did not object, it did not assert any confidentiality concerns, and it did not mark the response as "Attorneys' Eyes Only" or ask that it be kept confidential under a protective order or otherwise. (*See id.*)

Upon receipt, on October 15, Terves' counsel shared the Settlement with Terves' President, Andrew Sherman, to obtain permission to issue a subpoena to MMP—the company to which Bradley said it "handed over" the records. (Tr. 36:4-6, 42:2-43:10, 117:15-118:8, RE-17, PageID #207, 212-14, 288-

89; *see also* Compl. ¶54, RE-1, PageID #14.) Sherman shared the Settlement with Terves' employee Steven Barela for litigation purposes as he was helping with the case. (Tr. 44:6-21, 46:4-6, 54:1-14, RE-17, PageID #215, 217, 225.) Sherman skimmed the Settlement for five or ten minutes on October 15 and did not look at it again until U.S. Marshals served him with a redacted copy on December 18. (Tr. 36:4-37:1, 41:12-42:15, RE-17, PageID #207-08, 212-13.)

By October 25, 2019, MMP and its attorneys knew that Bradley had produced the Settlement to Terves without restriction. (Compl. ¶¶36, 39, RE-1, PageID #9-10.) Yet MMP did not object or say anything and allowed the Settlement to linger unrestricted for 10 days.

### C.   Terves subpoenas MMP.

Terves then subpoenaed MMP to obtain the evidence that Bradley said it "handed over" to MMP. On November 4, 2019, MMP objected to its subpoena based on an allegation that Bradley had "failed to notify Magnesium Machine [prior to disclosure] and thus is in breach of the Agreement." (11/4/19 letter, RE-1-9, PageID #72-73.) The Settlement allowed either party to produce it "in response to a valid subpoena or discovery request," but required notice to the other at least 20 days before disclosure "when possible or reasonable under the circumstances" to "afford it the

opportunity to seek a protective order or other appropriate remedy against disclosure." (Settlement ¶¶3.1.2 & 3.2, RE-1-8, PageID #62.)

Despite claiming Bradley breached the Settlement, MMP has not asserted any legal claim against Bradley.

### D. The parties meet-and-confer over MMP's objection.

In response to MMP's objection and at the request of counsel, Sherman and Barela deleted their copies of the Settlement. (Compl. ¶54, RE-1, PageID #14; Tr. 45:6-46:20, 54:15-55:9, RE-17, PageID #216-17, 225-26.)

Terves' counsel responded to MMP's counsel on November 6, 2019, that MMP's breach allegation against Bradley "has no effect on the validity of the subpoena issued to MMP," asked whether MMP wanted the parties to designated the Settlement as "Attorneys' Eyes Only – Subject to Protective Order" ("AEO") under L.P.R. 2.2, and stated that he "will quarantine the agreement and hold it secure as an officer of the court for twenty days." (11/6/19 email, RE-1-12, PageID #84.) The last gesture was curative: it provided MMP with the "20-day" opportunity that MMP claimed Bradley had deprived it.

In the evening of November 6, MMP replied that Terves should mark the Settlement AEO under L.P.R. 2.2, and Terves did so. (Email chain, RE-1-13, PageID #88.)

On November 7, Terves' counsel confirmed to MMP's counsel that he had "now designated the document as AEO under the Local Patent Rules"; offered to "stipulate to a protective order to further protect the document"; and suggested a "meet and confer" call. (11/7/19 email, RE-1-15, PageID #99.)

The attorneys for Terves, MMP, and Ecometal then had a meet-and-confer call on November 8. (11/7/19 email from MMP's counsel, RE-1-14, PageID #93 ("[I] agree a meet and confer is in order."); Compl. ¶50, RE-1, PageID #13.) According to MMP's complaint, it recorded the meet-and-confer call, although it did not tell Terves' counsel that the call was being recorded, and it has not provided the recording to the district court or to Terves. (*See* Compl. ¶50, RE-1, PageID #13.) MMP alleges that Terves' counsel stated during the call that he "did not believe that his client had further distributed the document." (*Id.*) Immediately after the call, Terves' counsel summarized the discussion by email and stated he would "check with my client to further confirm that the MMP/Bradley agreement was not shared with anyone (or if it was, that all copies have been clawed back and

destroyed). I will confirm this by signed letter or affidavit." (11/8/19 email, RE-1-16, PageID #102.)

As promised, Terves' counsel confirmed by signed letter that, after the meet-and-confer call, he had confirmed with Mr. Sherman that "he: (a) deleted all copies, (b) shared the settlement with only one Terves employee, and (c) did not share the settlement with anyone else or anyone outside of Terves." (11/20/19 letter, RE-1-17, PageID #105.) As to the Terves' employee that received the Settlement, Terves' counsel represented that he "confirmed to me that he deleted the settlement that Mr. Sherman sent to him by email, has no copies, and did not share it with anyone." (*Id.*)

MMP did not respond to this letter, object, or suggest that the letter left it dissatisfied.

This should have been the end of it.

But MMP had an idea.

### E.     MMP secretly sues and obtains a seizure order.

On December 4, 2019, MMP secretly sued and moved for an ex parte seizure order under the DTSA. MMP did not show the district court the actual language from the Settlement that it contended was trade secret. Instead, MMP's complaint labeled the trade secret as "MM TRADE SECRET

PRODUCTS AND METHODS," and defined that term as: "proprietary products, including dissolving magnesium slips and balls" and "a proprietary method of selectively degrading downhole tools in a subterranean formation, where at least a portion of the downhole dissolvable tool is contacted with a salt-based treatment." (Compl. ¶17, RE-1, PageID #4.)

Attempting to justify its unsupported attorney argument talking up the purported trade secret, MMP redacted ██████████████████ ██████ in the Settlement, which was its only basis for a trade secret, and replaced those words with the term "MM TRADE SECRET PRODUCTS AND METHODS." Below is a screenshot directly from MMP's complaint:

> 34. The Settlement Agreement also contains the following provision which identifies the MM Trade Secret Products and Methods, as follows:
>
>  1.6 Disclaimer of Interests. . . . Further the BMD Parties hereby disclaim any and interests and rights in and to the MMP Parties' designs and other intellectual property, including, but not limited to, [MM TRADE SECRET PRODUCTS AND METHODS] and agrees not to directly or indirectly manufacture, produce, market and/or sell dissolving magnesium balls or slips for a period of three (3) years from the Effective Date. . . .

(Compl. ¶34, RE-1, PageID #9 (highlight added).) Through that pleading trick, MMP and its attorneys spun a tale to the district court in their ex parte briefing and in camera argument that the attorney's own wording "MM TRADE SECRET PRODUCTS AND METHODS," and the redaction behind it

contained lengthy and important trade secret products and methods, and Terves' mere possession of those trade secrets would cause irreparable harm to MMP.

Hearing only from MMP's attorneys, the Court issued an ex parte seizure order on December 18, 2019, and U.S. Marshals seized Sherman's cell phone, laptop, and external hard drives. (RE 12, 15.). The Marshals also served Sherman with the complaint. This was the very first time that Terves or its counsel learned that MMP contended that Section 1.6 of the Settlement contained a "trade secret." If not for the lawsuit, neither Terves nor its counsel would ever have suspected that MMP believed ███████████ ████████████ was trade secret.

### F.   The district court vacates the seizure order.

The next day, on December 19, the Court held an evidentiary hearing on the seizure order, where Terves had its first opportunity to respond to MMP's allegations. At hearing, MMP's owner, Loren Swor, testified. On direct, Swor did not identify any trade secret disclosure in the Settlement.

On cross examination, Terves introduced as Exhibit 1 the unredacted version of the Settlement to probe Swor on what was trade secret. The comparison below shows exactly what MMP redacted from Section 1.6:



1.6 <u>Disclaimer of Interests.</u> The BMD Parties hereby disclaim any and all interests in that certain Exclusive Supply Agreement by and between MMP, BMD, and Protek Systems, LLC and dated December 8, 2015 as amended and that certain Mutual Non-Disclosure Agreement dated April 24, 2014 between MMP and ProTek Systems, LLC (collectively the "Protek Agreements"). Further the BMD Parties hereby disclaim any and interests and rights in and to the MMP Parties' designs and other intellectual property, ███████████████████████████████████████████ for a period of three (3) years from the Effective Date. The BMD Parties shall immediately deliver to MMP a signed Acknowledgement in the form attached hereto as **Exhibit "C".**

Redacted Version (RE-1-8, PageID #61)

1.6 <u>Disclaimer of Interests.</u> The BMD Parties hereby disclaim any and all interests in that certain Exclusive Supply Agreement by and between MMP, BMD, and Protek Systems, LLC and dated December 8, 2015 as amended and that certain Mutual Non-Disclosure Agreement dated April 24, 2014 between MMP and ProTek Systems, LLC (collectively the "Protek Agreements"). Further the BMD Parties hereby disclaim any and interests and rights in and to the MMP Parties' designs and other intellectual property, ███████████████████████████████████████████ for a period of three (3) years from the Effective Date. The BMD Parties shall immediately deliver to MMP a signed Acknowledgement in the form attached hereto as **Exhibit "C".**

Exhibit 1, Unredacted Version (RE-34.)

As to what was trade secret in Section 1.6, Swor admitted that:



Swor's further testimony and MMP's counsel's hearing statements made their trade secret claim even less plausible. First, Swor admitted that this term was incorrect because there is no patent, only a patent application, and that application was not attached to the Settlement or provided to Terves. (Tr. 91:22-25, RE-17, PageID #262.) Second, Swor and MMP's counsel described the trade secret ████████████████ which is not disclosed in Section 1.6. (*See* Tr. 94:3-6, 95:23-96:6, RE-17, PageID #265-67.) Thus, by MMP's own admission, the three-word disclosure was 2/3's wrong: it wasn't a patent, and ██████████████████████████████████ Swor's admissions contradicted and exposed the fiction told by MMP's counsel that to justify the entire suit and ex parte seizure.

Sherman, who has a Bachelors and Masters degree in Metallurgy from Ohio State, testified that he had no idea what part of the Settlement MMP believed was trade secret and didn't see any "detailed descriptions of anything," such as a product or method that would constitute trade secret information. (Tr. 37:2-12, 40:11-24, RE-17, PageID #208, 211) He testified that he and Barela deleted the Settlement at request of counsel, no one else

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

received a copy, and Terves did not use the Settlement for purposes other than the litigation. (Tr. 43:4-14, 44:6-21, 45:3-46:20, 54:15-55:6, RE-17, PageID #214-17, 225.) Sherman also testified that he had no intent of obtaining trade secrets by subpoena and only sought infringement evidence for the Patent Case. (Tr. 35:16-36:3, RE-17, PageID #206-07.) Sherman's testimony was unrebutted, as the district court noted: "Plaintiffs have never contended that there is any evidence to contradict the information presented at the hearing." (9/9/20 Order, RE-66, PageID #1285.)

MMP offered no evidence as to how or why Terves would have thought that a three-word reference to a "patent" was a trade secret, let alone how disclosing ███████████████████████████████████ would convey a trade secret.

The Court ruled from the bench that MMP did not prove a misappropriation by "improper means," which is required to maintain a seizure order, and vacated it. (Tr. 120:1-20, RE-17, PageID #291.) The Court found that Terves' counsel had acted properly by issuing a lawful subpoena for evidence and then sharing the evidence (which was produced without restriction) with his client. (*Id.*) With the redaction removed, the Court did not "see" any trade secret and doubted that ████████████████████

█████████ could be a trade secret since there is no such thing. (Tr. 121:8-10 ("I am actually—from what I see, there is no trade secret."); 119:5-8 ("… when I see █████████████████████ that's a false statement because there is no ███████████████████ as far as I know, at least there isn't in this case."), RE-17, PageID #292, 290.)

### G. The district issues written orders dissolving the seizure order.

Later on December 19, the district court issued a written order dissolving the seizure order. (RE-15, PageID #169-70.) The order cited two separate grounds: (i) MMP's failure to show a misappropriation by "improper means," 18 U.S.C. § 1836(b)(2)(A)(ii)(IV)(bb); and (ii) MMP's failure to show that the harm to MMP of vacating the seizure order outweighs the harm to the legitimate interests of Terves, § 1836(b)(2)(A)(ii)(III). (*Id.*)

On March 20, at MMP's request, the district court issued more findings and conclusions. (Order, RE-25, PageID #380-384) The Court ruled:

- "Terves caused the subpoena to issue in good faith, in compliance with the law and as a proper and lawful litigation activity to obtain evidence for the Patent Case." (Finding of Fact ("FoF") ¶2, RE-25, PageID #382.)

- "The Settlement Agreement was produced [by Bradley] without restriction, and was not marked 'Attorney's Eyes Only'[, and] Bradley offered no objection or any mention

of any confidentiality restrictions or concerns." (FoF ¶3, RE-25, PageID #382.)

- "Defendants were under no contractual or other legal obligation to refrain from obtaining or reviewing the Settlement Agreement." (Conclusion of Law ("CoL") ¶2, RE-25, PageID #383.)

- "Defendants did not act improperly when McDonald Hopkins shared the Settlement Agreement, which was presented as a non-restricted discovery, to its client, or when the client shared the Agreement with another employee for the purpose of assisting the Patent Litigation." (CoL ¶3, RE-25, PageID #383.)

- In response to MMP's objection, "Mr. Sherman and Barela deleted their copies of the Settlement Agreement and their lawyers designated the Settlement Agreement as 'Attorney's Eyes Only' under Local Patent Rule 2[.]2." (FoF ¶7, RE-25, PageID #382.)

- "There is no evidence that Terves, its agents, or its lawyers have disclosed the Settlement or its contents to any other parties not mentioned above." (FoF ¶8, RE-25, PageID #382-83.)

- "There is no evidence that Terves, its agents, or its lawyers used any information contained in the Settlement Agreement for any purpose other than litigating the Patent Case." (FoF ¶9, RE-25, PageID #383.)

On April 3, 2020, MMP appealed the Court's order dissolving the seizure order to this Court, Appeal No. 20-3397.

On May 13, 2020, Terves moved to dismiss the appeal because the ruling was interlocutory and not appealable. This Court dismissed the appeal as moot after the district court dismissed the case below.

**H.    The district court dismisses MMP's suit.**

On July 14, 2020 the district court granted Terves' and MH's motions to dismiss under Rule 12(b)(6) on two independent grounds: (i) failure to allege an act of "misappropriation," and (ii) the litigation privilege. (Opinion, RE-58, PageID #1119-1127; Judgment, RE-59, PageID #1128.)

MMP appealed.

**I.    The district court awards attorneys' fees.**

On September 9, 2020, the district court awarded attorneys' fees against MMP under the trade secret statutes for suing in bad faith. The district court explained why MMP never should have sued:

> Plaintiffs were well aware at the time the suit was filed that Defendants had received the allegedly secret information through legitimate discovery means and it was provided to them without restriction. They were also aware that the information had been shared with two of the client's employees but had not been distributed further. In addition, Plaintiffs notified Defendants of the allegedly secret nature of the information, before filing suit, and Defendants communicated with the Plaintiffs and voluntarily took measures to protect the information from further distribution, deleting all copies of the information in the client's possession, and marking the

> information as 'attorneys eyes only' to ensure confidential treatment under the Local Patent Rules.
>
> In other words, Plaintiffs knew, before they filed this action, how the information had been obtained, exactly who had seen the information, and that the information had since been restricted.

(Order, RE-66, PageID #1284)

The district court then explained why MMP undoubtedly should have dismissed after the hearing:

> Further, even if Plaintiffs could argue some uncertainty about these issues at the time they filed the Complaint, they could not argue ignorance following the hearing on the ex parte seizure order. All of the information that Plaintiffs knew, or should have suspected, would defeat their claims was confirmed at the hearing. Plaintiffs have never contended that there is any evidence to contradict the information presented at that hearing, and they had no basis for continuing the lawsuit beyond that point.

(*Id.*, PageID #1284-85.)

As to the "trade secret" claim, the district court admonished that the "representation in the Complaint that th[e redacted] phrase equates to a disclosure of 'MM Trade Secret Products and Methods' is an intentional exaggeration/misrepresentation of the alleged disclosure at issue." (*Id.*, PageID #1286.) The district court explained how MMP "initially balked at specifically identifying the alleged trade secret upon which their claim was

based" at hearing. (*Id*.) "Once pressed, the passage they claim to be a disclosed 'trade secret' is a three word phrase ending in the word 'patent.'"

(*Id*.) As the district court explained:

> There is no reason, that upon seeing the phrase '---- ---- patent' in a settlement agreement, Defendants would have assumed they were in possession of a trade secret. The most this information discloses is the existence of a patent involving the preceding general descriptor.
>
> Patents by their very nature are public rather than secret, which means that if the disclosed patent existed, the information would already be publically known. Moreover, Plaintiffs have admitted that this phrase does not even correctly describe the information they claim to be secret, and that there is no such patent in existence.
>
> In short, Plaintiffs' claim that MM Trade Secret Products and Methods were ever disclosed is at best intentionally misleading, and at worst, intentionally deceptive.

(*Id.*, PageID #1286)

As to MMP's lawyers, the district court found they were "less than fully professional or forthright" and sanctioned them for unreasonably and vexatiously multiplying the proceedings. (*Id.*, PageID #1287-88.)

MMP appealed the fee award to this Court, Appeal No. 20-3998. The district court has not yet set the amount of fees, although briefing is complete.

## Summary of Argument

This Court should affirm the district court's dismissal on any of three separate legal grounds: (i) MMP failed to allege a plausible trade secret because the ███████████████ term on which it sues does not communicate anything that could plausibly meet the statutory definitions of "trade secret"; (ii) MMP failed to allege misappropriation by acquisition[5] against Terves because only acquisitions "by improper means" are actionable, and MMP alleges that Terves acquired that trade secret by proper means, namely by lawful subpoena; and (iii) the litigation privilege bars one from suing an attorney and his client for receiving a subpoena response produced without restriction, especially when they responded to plaintiff's confidentiality objection by voluntarily deleting the document and marking it "AEO" under Protective Order.

If this Court reaches the order dissolving the seizure order, it should affirm because MMP failed to meet its burden at hearing on at least five of the eight requisite proof factors under § 1836(b)(2)(A)(ii)(I)–(VIII) such that the district court abused no discretion.

---

[5] MMP does not allege misappropriation by "disclosure or use" against Terves, which are varieties of misappropriation governed by different subsections of the trade secret acts. (*See infra* p.35-36.)

The Court should not reach MMP's fourth appeal issue on the alleged denial of "further injunctive relief" because denials of TROs are not appealable, MMP never moved for a preliminary injunction, and—because MMP never moved—Terves never had a due process opportunity to be heard on the four injunction factors.

**Argument**

## I.    This Court should affirm dismissal.

### A.    Standard of Review.

This Court reviews dismissal under Rule 12(b)(6) *de novo*. *Watermark Senior Living Retirement Communities, Inc. v. Morrison Mgmt. Specialists, Inc.*, 905 F.3d 421, 425 (6th Cir. 2018).

### B.    Rule 12(b)(6) Legal Standard.

The district court must dismiss an action that "fail[s] to state a claim upon which relief can be granted." Fed. R. 12(b)(6). To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678.

While the court presumes as true factual allegations, it does not presume the truth of conclusory allegations, legal conclusions couched as factual allegations, or implausible or unwarranted inferences. *See id.*; *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).

To survive a motion to dismiss, a "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a 12(b)(6) motion, the district court may consider "public records" and court transcripts that "refute a plaintiff's claim" without converting the motion to one for summary judgment. *Watermark*, 905 F.3d at 425-26.

C.     **Dismissal is especially appropriate here.**

The right to file and prosecute a lawsuit is constitutionally protected under the First Amendment to the U.S. Constitution and Article I, Section 16

to the Ohio Constitution. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St. 3d 366, 372–73 (2012).

To protect that right, lawsuits against parties and their attorneys over litigation conduct are disfavored. (*See infra* p.49-50.) Allowing such lawsuits to proceed into costly and invasive discovery interferes with the attorney-client relationship, stifles attorneys' zealous representation of clients, chills communications between attorneys and their clients, interferes with the search for truth, and multiplies the litigation. *See id.; cf. Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure.").

Thus, courts should dismiss meritless lawsuits over litigation conduct at the earliest stage. *See* Anenson, T. Leigh, *Absolute Immunity from Civil Liability: Lessons for Litigation Lawyers*, 31 Pepp. L. Rev. 915, 918 (2004) ("Requiring a judicial determination of absolute immunity allows courts to dismiss cases against attorneys at the earliest possible stage in the litigation, which furthers the public policy underlying the doctrine by inhibiting interference between an attorney and his or her client.") (RE-46-1, PageID #966-994.)

Additional factors make this case ideal for disposition at the pleading stage: (i) the alleged misappropriation was a single email with attachment sent by Terves' counsel to his client; (ii) MMP identifies just three words in that emailed attachment as allegedly trade secret; (iii) the facts regarding the alleged misappropriation are, by MMP's admission, "undisputed" (Br. 4); and (iv) MMP admits there is a "thorough record" because of the evidentiary hearing (Br. 1).

### D. This Court should affirm dismissal on any of three separate grounds.

Here, the trial court correctly dismissed on two separate grounds: (a) failure to allege a "misappropriation," and (b) the litigation privilege. Because the trial court also could have dismissed for failure to allege a plausible "trade secret," this Court should affirm on that basis as well. *See Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002) (court of appeals is "free to affirm the judgment on any basis supported by the record").

#### 1. MMP's allegation that ███████████ ████████ discloses a trade secret is implausible.

Terves begins with MMP's trade secret allegation because the trivialness of that generic and incorrect three-word descriptor shows the overall implausibility of the case.

To state a viable claim, MMP needed to identify a misappropriated trade secret that could plausibly meet the definition of "trade secret." While the existence of a trade secret is a question of fact, there are situations, such as this, where it is evident from the pleadings that the disclosure alleged as a "trade secret" cannot plausibly meet the statutory definition. *See Murray Energy Holdings, Co. v. Bloomberg, L.P.*, No. 2:15-cv-2845, 2016 WL 3355456, at *6-10 (S.D. Ohio June 17, 2016) (dismissing where no alleged facts show how information meets statutory definition); *Geovector Corp. v. Samsung Electronics Co. Ltd.*, 234 F. Supp. 3d 1009, 1016-17 (N.D. Cal. 2017) (dismissing under Rule 12(b)(6) and finding information alleged as trade secret "does not meet the definition of a 'trade secret'"); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 465-66 (S.D.N.Y. 2020) ("Although the plaintiffs described these alleged trade secrets with sufficient particularity, the plaintiffs have failed to allege how this zip code set derives independent economic value from not being publicly known given the quantity of similar zip code sets publicly available, particularly in the roughly contemporaneously published '965 patent series.")

MMP's complaint confirms that the only alleged trade secret is the ██████████████████████████████ (*See supra* p.15-18.) And MMP says that

two of the three words are incorrect because it should refer to a ██████ ████████████████████████████████████ which is not identified in the Settlement (*Id.*) If this Court ignores the mistakes, then MMP's complaint fails because a general reference to a "patent" could not plausibly be trade secret. *See Accent Pkg., Inc. v. Leggett & Platt, Inc.*, 707 F.3d 1318, 1329 (Fed. Cir. 2013) (affirming dismissal of trade secret claim because, "[a]s a matter of law," information "disclosed in or ascertainable from the asserted patents became publicly available ... and, as such, could not constitute a trade secret").

To show the level of implausibility here, even if this Court accept that the "patent" was a patent application, the application was kept secret, and could have a trade secret in it, Terves never obtained from Bradley or anyone else a copy of that patent application. Either way, the Settlement does not disclose a trade secret; at best, it references either: (a) a non-trade secret "patent," or (b) a "patent application" document that Terves never saw or received. All roads lead to the same conclusion: implausible because the Settlement itself, which is all that Terves received, does not disclose any trade secret.

MMP provides no allegation, nor can it, as to how Terves or its attorneys would have known that a reference to a "patent" was actually a reference to an unpublished patent application, or how or why that reference buried in a "Disclaimer of Interests" section on page three of a 12-page settlement would have caught their attention as trade secret. Again, it was only through MMP's surprise lawsuit that Terves learned what MMP believed was trade secret.

If the Court re-writes ████████████████████████ ████████████████████████ the term still cannot disclose a plausible trade secret because the term ████████████ is far too generic to convey a specific formula or method, no matter how smart the reader. ████████████████████████████████ ████████████████████████████████ ████████████████████████ cannot, under any plausible reading of the term, constitute information that "derives independent economic value, actual or potential, from not being generally known." 18 U.S.C. § 1839(3)(B).

Any concern that ████████████████ could itself be trade secret is dispatched by patents and patent applications that publicly disclose the

known fact that ████████████████████████████████████████
████████████████████████ Because detailed, public records identify this
non-secret use ██████████████████ it is implausible for MMP to assert
██████████████████ is somehow trade secret. *See, e.g., Ultimax Cement*
*Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009)
("combin[ing] lithium carbonate and citric acid in calcium sulphoaluminate
cement had been publicly disclosed in a Japanese patent, preventing it from
being a secret and therefore defeating a trade secret claim.").

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

MMP says courts must ignore publicly-known facts that refute its case, but the *CODA Development* case on which it relied below is distinguishable and outside this circuit. (Opp to MTD, RE-47, PageID #1046.). In this Circuit, courts may take judicial notice of public records that refute plaintiff's claim, as they should. *See Watermark*, 905 F.3d at 425-26.

In the end, the term ███████████████████ discloses, in a light most favorable to plaintiff, the fact that some publicly-available patent discloses ████████████████ That fact, which isn't even true according to MMP, cannot plausibly meet the statutory definition of a "trade secret." This Court should affirm on that basis alone.

## 2. MMP failed to allege a misappropriation by Terves.

To state a claim, MMP also needed to allege a plausible "misappropriation," which must be one of three acts: (a) an acquisition by improper means, (b) a disclosure to a third-party, or (c) use of the trade secret. *See* 18 U.S.C. § 1839(5).[7] The district court correctly ruled that MMP's complaint does not allege any of those acts by Terves. This Court should affirm.

---

[7] Because all three trade secret acts asserted here are almost identical, Terves' argument cites sections from the DTSA and provides a chart in Appendix A that correlates those subsections to the corresponding sections in the Ohio and Oklahoma statutes when all three statutes apply.

### a. MMP does not allege misappropriation by "disclosure" against Terves

MMP concedes that Terves has not misappropriated by "disclosure" of the Settlement. In its motion to dismiss below, Terves explained that Sherman's disclosure to Barela was not a disclosure by Terves because they both were employees of Terves and, thus, it was a disclosure from Terves to itself. MMP did not disagree and, instead, narrowed its legal claim to the singular occurrence of Terves' counsel emailing the document to Sherman on October 15, 2019. (Opp. to MTD, RE-47, PageID #1049.) According to MMP, Sherman sharing the Settlement with Barela later is a "red herring" because the "misappropriation occurred before Mr. Sherman ever passed the Settlement Agreement to [Barela]." (*Id.*) MMP's Brief here likewise focuses entirely on Terves' counsel sharing the document with Sherman as the singular act of misappropriation. (*See* Br. 27 (citing disclosure from MH "to another, Terves, its client" as the alleged act of misappropriation).) Thus, MMP does not allege that Terves misappropriated by disclosure.

MMP also does not allege an actionable disclosure against MH because MH received the subpoena as the attorney and agent for Terves, such that providing it to Terves was a Terves-to-Terves disclosure (*see infra* p.38-39).

### b. MMP does not allege misappropriation by "use."

As to misappropriation by *use*, there is no plausible allegation that Terves or MH has "used" the alleged trade secret. The fact that two Terves' employees had possession of the Settlement for a short period of time does not plausibly allege that they *used* the alleged trade secret for competitive purposes. *See Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1066-67 (N.D. Ill. 2020) ("mere possession of trade secrets does not suffice to plausibly allege disclosure or use of those trade secrets"). MMP does not argue misappropriation by "use" in its Appellant Brief against either defendant, and it did not contend that it alleged a "use" before the district court. Thus, MMP rests its entire case against Terves on the "acquisition" variety of misappropriation.

Because MMP does not allege a valid "disclosure or use" against Terves or MH, the entirety of subpart (B) in the DTSA, and its corollaries in the other state acts, are irrelevant.

### c. MMP has not plausibly alleged a misappropriation by "acquisition".

#### i. MMP has not pleaded acquisition by improper means.

A claim for misappropriation by "acquisition" can <u>only</u> proceed with a plausible allegation that defendant acquired the trade secret while "know[ing] or ha[ving] reason to know that the trade secret was acquired <u>by improper means</u>." 18 U.S.C. § 1839(5)(A) (emphasis added). Subpart (A) of the DTSA, is the <u>only</u> way to sue for acquisition of a trade secret. In contrast, there are five different ways to prove misappropriation by "disclosure or use," and those are addressed in subpart (B). Because MMP does not allege a "disclosure" or "use" by Terves, subpart (B) of the statute is irrelevant. MMP can only state a claim against Terves by plausibly alleging misappropriation under subpart (A), which it fails to do. Oddly, MMP reproduced in its Brief only subpart (B) of the statute and omitted subpart (A)—the only subpart it asserts against Terves. (Br. 25.)

MMP's own pleading acknowledges that Terves acquired the Settlement by lawful subpoena. (Compl. ¶¶ 26, 31-32, RE-1, PageID #6-8; *see* Opp. to MTD, RE-47, PageID #1049 ("McDonald Hopkins lawfully obtained the settlement agreement in the first place.").) That is the antithesis of

"improper means," especially where the DTSA defines "improper means" as excluding "lawful means of acquisition." § 1839(6)(B). Because MMP's complaint establishes that Terves acquired the Settlement by lawful means, the district court was correct to dismiss, and this Court should affirm on that basis alone without going any further.

MMP tries to disjoin Terves from its counsel as separate parties to say MH "acquired" the Settlement from Bradley and then "disclosed" it to Terves. That violates agency law, ignores that an attorney is the client that he represents in our representative litigation system, and ignores how subpoenas and discovery operate. *See Mager v. Wisconsin Central Ltd.*, 924 F.3d 831, 841 (6th Cir. 2019) (Sutton, J., concurring) ("Trying to pry apart a lawyer's representational actions from those of his client is like trying to separate Mark Twain from Samuel Clemens."); *Cf. Snyder v. Ag Trucking, Inc.*, 57 F.3d 484, 489-90 (6th Cir. 1995) (in defamation context, based on agency principles, publication to attorney is same as publication to client).

To the extent Terves "acquired" the Settlement, Terves acquired it from Bradley by subpoena. When an attorney receives discovery in an active case, he receives it as the party that he or she represents. *See* Fed. Civ. R. 26(b)(1) ("*Parties* may obtain discovery …") (emphasis added). When Terves'

attorney received Bradley's subpoena production, he did so as the agent and attorney for Terves (not on behalf of his law firm). Indeed, MMP's arguments over L.P.R. 2.2, addressed in the next section, admit that an attorney is the "party" that he represents when he receives discovery. (*See infra* at p.40 footnote 8.)

Thus, when Terves' counsel provided the Settlement to Sherman, it was not MH "disclosing" the settlement to a third-party, nor was it a third-party "acquiring" the Settlement from MH. Instead, it was an intra-party disclosure from Terves to Terves: Terves' attorney to Terves' principal. *See Rogers Corp. v. Arlon, Inc.,* 855 F. Supp. 560, 571-72 (D. Conn. 1994) (employees sharing alleged trade secret document is disclosure by company "to itself" and not an actionable disclosure). In the end, there was only one disclosure: Bradley's disclosure to Terves. Because that acquisition occurred by lawful subpoena, it cannot plausibly be an acquisition by improper means. This simple truth should end the case as against both defendants.

*ii. MMP's L.P.R. 2.2 arguments are incorrect.*

MMP's arguments about L.P.R. 2.2 are meritless. On appeal, MMP has altered its L.P.R. argument. Below, MMP said that L.P.R. 2.2 required Terves' counsel to "treat all confidential documents obtained as Attorneys Eyes Only

Confidential." (Opp. 16, RE-47, PageID #1049.) The district court rejected that because L.P.R. 2.2 only applies to documents that are "marked" with the "AEO" designation. Because MMP admitted the Settlement had <u>not</u> been marked when Terves' counsel shared it with his client (*see* Compl. ¶39, RE-1, PageID #10), the district court correctly dismissed.

On appeal, MMP now argues that L.P.R. 2.2 imposes an affirmative duty on counsel that receives unrestricted discovery to determine whether anything should have been "deemed confidential" by the producing party, and then mark it. Because the rule "speaks only of parties ('party' and 'adverse party')," MMP says it "assigns the duty to protected discovery deemed confidential to counsel for the parties in the patent litigation." (Br. 30.)[8] This argument fails to establish misappropriation for several reasons.

### iii. MMP's reading of L.P.R. 2.2 is incorrect.

First, MMP misinterprets the rule. Its plain language tells its purpose and effect:

---

[8] By equating this rule's reference to a "party" to "counsel for the parties," MMP's argument admits too much: namely, that MH received the Settlement as a "party," *i.e.*, as Terves, which defeats its argument that MH's disclosure to Terves was an actionable disclosure between two separate and distinct parties.

> Pending entry of a protective order, discovery and disclosures deemed confidential by a party shall be produced to the adverse party for the eyes of outside counsel of record only, marked "Attorney's Eyes Only – Subject to Protective Order." The discovery and disclosures so marked shall be used solely for purposes of the pending case and shall not be disclosed to the client or any other person.

When the rule states that a "party" shall designate a document it "deems confidential," the Rule refers to the party responding to a discovery request. That makes sense because the producing party has the confidentiality interest and knowledge about it. The rule came about because parties were withholding confidential documents until protective orders were entered. This delayed discovery while the parties negotiated stipulated protective orders, or moved the district court for one. L.P.R. 2.2 removes this delay by requiring parties to produce their confidential documents immediately under an "AEO" designation "[p]ending entry of a protective order."

Reading the rule as applying to a *recipient* of discovery makes no sense because it says discovery "shall be produced to the adverse party" with the designation. There is no production to an adverse party after one receives discovery. The mandatory "shall" language is directed at the party considering withholding documents based on a confidentiality objection. It was never intended to obligate opposing counsel to review someone else's

production and determine whether any documents should be deemed confidential *after receipt* and then to mark them. The rule's text imposes no such obligation, and no one ever read the rule that way, as evidenced by the absence of caselaw citations in MMP's Brief (Br. 27-32). This is not to say that a party cannot voluntarily mark a document under LPR 2.2, as Terves did to resolve MMP's objection. But there is no obligation that the receiving party do so, especially when the producing party raises no confidentiality objection.

Here, if anyone had an obligation to object or mark the document, it was Bradley and not Terves, who worked cooperatively with MMP to undo what Bradley had done. The fact that Bradley chose to forego legal counsel, despite having legal counsel represent it negotiating the Settlement (*see* Settlement ¶6.14, RE-1-8, PageID #65 (identifying Bradley's counsel)), does not mean MH became Bradley's de facto lawyer with a duty to provide legal advice, and MMP cites no law that would impose that conflict of interest upon trial lawyers. Indeed, MMP and Ecometal admit that they and "their respective counsel" learned Bradley produced the Settlement without restriction on October 25 (Compl. ¶36, RE-1, PageID #9), and none of them marked the Settlement under L.P.R. 2.2 or said anything until November 4.

And MMP only objected then because Terves served MMP with a subpoena on November 1. (MMP letter, RE-1-9, PageID #72.)

MMP argues, half-heartedly and for the first time on appeal, that Rule 45's obligation that counsel "avoid imposing undue burden and expense" required counsel "to make Bradley aware of the availability of the protections of L.P.R. 2.2." (Br. 28.) Because MMP never made this argument to the district court, it is waived. *See George v. Youngstown State Univ.*, 966 F.3d 446, 468 n.6 (6th Cir. 2020). Regardless, the argument makes no sense because Bradley never objected to the subpoena as imposing an undue burden and expense, MMP's confidentiality objection is not within the scope of that rule, MMP provides no caselaw to suggest otherwise, and Terves nonetheless remedied MMP's confidentiality objection by deleting the Settlement and putting it under Protective Order.[9]

MMP worries that without reading the rule as it does, it "does not have any plausible remedy to protect its trade secrets." (Br. 30.) Not true. MMP has a Protective Order, the order itself says it "shall apply to non-parties," and Civil Rule 71 allows non-parties to enforce Court orders as if they are

---

[9] The district court entered a Protective Order in the Patent Case on November 22, 2019 (RE-21). The Settlement's AEO protection under L.P.R. 2.2 transferred to the Protective Order at that time.

parties. (Protective Order ¶12, RE-21 in Patent Case.) The Protective Order, which MMP's own attorneys stipulated to as counsel for Ecometal, bars Terves' employees from having access to the document, it bars MH and Terves from using the document "for any purpose whatsoever other than the prosecution or defense of this action," and it survives the termination of the case. (*Id.* ¶¶6, 13(a)). It has same effect, force, and imprimatur as any court order and is enforceable through contempt.

MMP's concern about "future third parties that mention confidentiality in a cover letter, but fail to mark the specific confidential pages with an "attorney's eyes only" legend" is misleading because Bradley's cover letter does <u>not</u> mention confidentiality whatsoever. (RE-1-8, PageID #58.) If one inadvertently produces discovery without an AEO designation, the established approach is to claw it back and mark it under a Protective Order, which is exactly what happened here. In fact, the Protective Order protecting the Settlement here has an inadvertent disclosure term that merely says "[i]nadvertent productions ... without a designation of CONFIDENTIAL or ATTORNEYS EYES ONLY shall be governed by Fed. R. Evid. 502," and Terves has complied with that term by not asserting waiver (Protective Order ¶ 6(e), RE-21 in Patent Case.)

*iv. LPR 2.2 does not support this lawsuit, no matter how it is read.*

MMP's reading still fails to state a claim against Terves, if it were correct. First, as the district court stated, a discovery rule violation is handled by the presiding judge; it does not justify a new lawsuit. (Order, RE-58, PageID #1126 ("there is no support in any of the case law cited that would permit a civil lawsuit against an attorney and his client merely for allegedly violating a local rule of procedure").)

Second, MMP fails to tie L.P.R. 2.2 to a valid misappropriation theory against Terves. MMP's L.P.R. analysis ends with a puzzling conclusion. According to MMP, because it's reading of LPR 2.2 imposes a duty upon MH to mark the Settlement, it has alleged that "Defendant Terves <u>received</u> disclosure of MMP's alleged trade secret '<u>derived from or through a person who owed a duty</u>' to MMP to maintain that secrecy, thus constituting misappropriation." (Br. 32 (emphasis added).) The "owed a duty" language, however, applies only to acts of "disclosure or use" under subpart (B). *See* § 1839(5)(B)(ii)(III). It does not apply to allegations that one "acquired" a document, which is the only theory that MMP asserts against Terves. Because MMP does not contend that Terves *disclosed* or *used* the alleged

trade secret, the "owed a duty" language is irrelevant as to Terves, regardless of what LPR 2.2 requires.

MMP argued it differently at the district court. It argued that a violation of LPR 2.2 constitutes improper means. (Opp., RE-47, PageID #1049.) MMP abandoned that argument on appeal because it does not appear in Section A of its Argument section. The only "improper means" argument that MMP makes in Section A is in footnote 4 on page 34, which does not involve LPR 2.2 at all, and is a new argument. MMP's legally incorrect LPR 2.2 arguments do not allege improper means.

> *v.  MMP's second "owed a duty" argument misses the mark.*

On page 34 of its Brief, MMP says it alleged a "second basis" of misappropriation that was ignored by the district court. According to MMP, its "Complaint also alleges that Terves knew or should have known the alleged trade secret was obtained from Bradley who owed a duty of confidentiality to MMP." (Br. 34.)

Again, MMP confuses the structure of the trade secret statutes. This "owed a duty" language only applies to allegations of "disclosure or use" of a trade secret. § 1839(5)(B)(ii)(III). Because MMP does not allege a "disclosure

or use" by Terves, and specifically disavowed Sherman's disclosure to Barela as an actionable disclosure (*see supra* p.35), whether Bradley owed a duty to MMP is irrelevant. This argument also fails as to MH because it never disclosed the Settlement to any third-party, but only disclosed it to its client, which is not an actionable disclosure (*see supra* p.38-39.)

> ### vi. MMP's new "misrepresentation" argument is meritless and waived.

For the first time on appeal, and tellingly in a footnote, MMP argues that counsel's meet-and-confer statements are "misrepresentations" that satisfy the "improper means" definition. (Br. 34.) This—"yet another theory"—argument fails for at least three reasons.

First, MMP never raised this argument before the district court, hence it is waived. *George*, 966 F.3d at 468 n.6. Instead, MMP rested its "improper means" assertion entirely on its incorrect theory that MH had violated LPR 2.2. (*See supra* p.46.)

Second, liability may be triggered only if the secret is "acquired by" improper means. § 1839(5)(A). MMP says the misrepresentations occurred between November 6-8 during the meet-and-confer work to resolve MMP's objection <u>after</u> Terves received the Settlement. (Br. 34 n.4.) Indeed, MMP

told the district court that what happened after the initial October 15 attorney-to-client disclosure are "red herrings" as to the misappropriation question. (*See supra* p.35). Thus, MMP does not allege that either defendant acquired the Settlement by misrepresentation.

Third, the complaint's allegations and the meet-and-confer emails and letters attached to the complaint do not support the heavy allegation that counsel committed "misrepresentations." MMP alleges that Terves' counsel stated during a meet-and-confer call with MMP's counsel that he "believed" that Sherman did not share the document with anyone else. The email from Terves' counsel, sent immediately after that call, promised to "check" and "further confirm" that it was not "shared with anyone," and "**if it was**, that all copies have been clawed back and destroyed." (11/8/19 email from Terves' counsel, RE-1-15, PageID #99 (emphasis added).) That email, especially the use of the phrase "if it was" signaled something less than 100% certainty, such that it cannot be viewed as a misrepresentation, especially when Terves' counsel followed up on November 20 by letter to state that a second Terves' employee had received the Settlement and deleted it. The Court should reject MMP's attempt to twists counsel's good faith efforts to resolve the dispute.

### 3. This Court should affirm dismissal on a third ground: the litigation privilege.

#### a. Litigation conduct is immune against tort liability.

The law immunizes acts by litigants and their attorneys that are part of a judicial proceeding. *See Reister v. Gardner*, 149 N.E.3d 112, 117-118 (Ohio App. 2019).

"Given the importance to our justice system of ensuring free access to the courts, promoting complete and truthful testimony, encouraging zealous advocacy, giving finality to judgments, and avoiding unending litigation, it is not surprising that ... the litigation privilege, has been referred to as 'the backbone to an effective and smoothly operating judicial system.'" *Silberg v. Anderson*, 786 P.2d 365, 370 (Cal. 1990)

The rationale and policies underlying this rule are many:

- Any litigation misconduct, especially discovery disputes, should be dealt with by the trial court, which is in the best position to police those matters by issuing sanctions, issuing and enforcing orders, including protective orders, using contempt powers, and exercising its inherent power to control the proceeding and maintain order. *See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608-09 (Fla. 1994).

- Allowing tort lawsuits over litigation conduct would encourage tactical use of such lawsuits to gain settlement leverage, disqualify trial counsel, drive a wedge between an

opposing party and its attorney, and deflect attention and resources away from the primary lawsuit. *See* NYSBA Ethics Op. No. 483 (1978) (lawsuit against opposing counsel creates the "obvious temptation" to use the second suit for "gaining some improper collateral advantage in the original action"), RE46-3, PageID #1021-26.

- Allowing such lawsuits would chill a party's search for documentary and testimonial evidence by subpoena. *See Brisco v. LaHue*, 460 U.S. 325, 333 (1983) ("the dictate of public policy … requires that the paths which lead to the ascertainment of truth should be left as free and unobstructed as possible").

### b. The *Stork-Werkspoor Diesel* case explains why one cannot sue a party for obtaining evidence that is allegedly trade secret.

*Stork-Werkspoor* involved a products liability lawsuit over a ship that sank. *Stork-Werkspoor Diesel V.V. v. Koek*, 534 So.2d 983, 985, (La. Ct. App. 1988). The cargo owners sued the manufacturer of the ship's engine (SWD) in federal court in New York. They alleged that SWD's negligent design of the engines caused the sinking. The cargo owners hired a former SWD employee, Koek, as an expert to tell them about the engines. SWD alleged that Koek disclosing confidential information about the engines to the cargo owners was trade secret misappropriation, sued in Louisiana, and the trial court enjoined Koek from providing any further information to the cargo owners. *Id.*

The Louisiana Court of Appeals reversed and held the trade secret act does not apply to evidence obtained in a lawsuit. The act was designed "to prevent one person or business from profiting from a trade secret developed by another, because it would thus be acquiring a free competitive advantage." *Id.* at 985. "The act was ***never intended to apply to discovery in civil actions*** and we decline to so interpret it." *Id.* (emphasis added). While using Koek's information to win the New York federal lawsuit would "certainly be of economic advantage" for the cargo owners, that type of advantage is not within the purview of the Trade Secrets Act because it "does not derive from use of the information in an unfairly competitive manner." *Id.* at 986.

The appeals court explained why obtaining evidence in discovery cannot be an act of trade secret misappropriation and how "protective orders" are the means by which trade secrets are protected in discovery:

> We are further persuaded that the act is not applicable here because to hold otherwise would lead to absurd consequences. Proof in products liability cases often involve trade secrets of design, manufacturing, testing and other information, which would provide competitors with an unfair advantage were it made known to them. However, both Rule 26(c) of the Federal Rules of Civil Procedure and La. Code Civ.Pro. art. 1426, provide protection to litigants when such information is sought for discovery purposes. Their remedy is to seek protective orders

from the court which will prevent disclosure of those secrets to others who could use them for unfair competitive purposes.

To permit such litigants, in addition, to enjoin disclosure of such information by all of its employees under the Trade Secrets Act would have the effect of rendering all discovery devices totally ineffective. The result would be that meritorious claims could never be fairly litigated where crucial information was cloaked in the mantle of "trade secrets." Such a result would, in this court's opinion, be absurd and would lead to manifest injustice.

*Stork-Werkspoor*, 534 So.2d at 986.

Although *Stork-Werkspoor* does not explicitly invoke the "litigation privilege" by name, the logic and policies are the same: you cannot sue a party for obtaining evidence in discovery that is allegedly trade secret.

### c. Ohio's litigation privilege bars the Ohio claim.

Ohio has followed the national trend of applying the litigation privilege to all causes of action (regardless of form) directed at litigation communications or conduct: "While the privilege historically was raised to defeat defamation claims, the modern version has broadened in most states to include multiple tort claims." *Reister*, 149 N.E.3d 112, 117-118. Quoting the 11th Circuit, the Ohio Court of Appeals held "[a]bsolute immunity must be afforded to *any act* occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement *or other*

*tortious behavior …* so long as the act has some relation to the proceeding."
*Id.* (emphasis added) (quoting *Jackson v. BellSouth Telecommunications,* 372
F.3d 1250, 1274 (11th Cir. 2004)).

Because MMP sued on Terves' receipt of an unrestricted subpoena
response, the litigation privilege applies to bar the Ohio claim. This Court
should affirm.

### d. Oklahoma's litigation privilege bars the Oklahoma claim.

"Oklahoma has afforded participants in judicial proceedings an
absolute immunity against later civil suits grounded in litigation conduct."
*Knight v. Mooring Capital Fund, LLC,* 749 F.2d 1180, 1185 (10th Cir. 2014)
(citing cases). In *Patel,* the Oklahoma Supreme Court affirmed the dismissal
of claims for fraud, deceit, and perjury against a party and its trial counsel
under the litigation privilege and, in doing so, held that "no civil remedy is
available for litigation-related misconduct." *See Patel v. OMH Med. Center,
Inc.,* 987 P.2d 1185, 1201-03 (Okl. 1999).

Because MMP seeks a civil remedy for alleged litigation-related
misconduct, Oklahoma's litigation privilege bars the claim under Oklahoma
law as well.

### e.  The federal litigation privilege bars the DTSA claim.

#### i.  *Federal common law recognizes a litigation privilege.*

MMP's claim that there is "no such thing as a federal common law litigation privilege" is mistaken. (Br. 37.)

District courts in this Circuit have recognized a federal litigation privilege. *See, e.g.*, *Prakash v. Altadis U.S.A. Inc.*, No. 5:10CV0033, 2012 WL 1109918 *10 (N.D. Ohio Mar. 30, 2012) ("Litigation privilege, and its antitrust counterpart, the *Noerr Pennington* doctrine, immunize Defendants from federal or state liability based on their trademark enforcement efforts."); *see also Rosania v. Taco Bell of Am.*, Inc., 303 F. Supp. 2d 878, 888 (N.D. Ohio 2004) (*Steffes* recognized "a qualified litigation privilege").

This makes sense because the policies underlying the state litigation privileges apply with equal force to federal claims, the Federal Rules of Civil Procedure mirror state procedure rules, redundant state and federal claims should be treated consistently, state rules of professional conduct govern lawyers in federal courts, and the right to file and prosecute lawsuits are protected by the state and U.S. constitutions.

Ironically, the 7th Circuit's *Steffes* decision cited by MMP supports the application of the federal litigation privilege here. *Steffes v. Stepan Co.*, 144 F.3d 1070 (7th Cir. 1998). There, plaintiff Steffes sued her former employer Stepan under the ADA. *Id.* at 1071. During litigation, a Stepan employee called Steffes' then-current employer, Dow Chemical, to ask whether Steffes was employed and told Dow about the lawsuit and Steffes' disability. Steffes lost two weeks of work while Dow investigated her disability, and Steffes filed a second lawsuit against Stepan for retaliation based on the disclosure to Dow. *Id.* at 1075.

The district court dismissed the second lawsuit based on the litigation privilege, and the Seventh Circuit affirmed. *Id.* at 1074, 1077. While the Seventh Circuit declined to apply an "absolute" privilege, it recognized a qualified litigation privilege: "neither is [the privilege] so stingy as to offer no protection to the communication at issue here." *Id.* at 1077. Because the "disclosure arose in the context of the discovery process" (*id.* at 1076), because "Defendants in discrimination suits must have some leeway to investigate possible defenses without undue fear of being subjected to additional liability in retaliation suites" (*id.* at 1077), and because "litigation

tactics subject to supervision by the court cannot constitute independent grounds of liability" (*id.* at 1076), the Court affirmed the dismissal.

Thus, a federal common law litigation privilege does exist.

### ii. The federal litigation privilege bars the DTSA claims.

To the extent the litigation privilege in federal court is not "absolute," caselaw highlights two factors relevant to when the privilege should apply.

First, if the privilege frustrates the purpose of the cause of action, the privilege may not apply. So, for example, the litigation privilege may not apply to abuse of process, malicious prosecution, or breach of a contractual promise not to do something, despite the alleged wrongful conduct occurring in litigation. *See, e.g., Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197 (11th Cir. 2018) (insurance company that sued to invalidate insurance policy could be sued for breaching "incontestability" clause in insurance contract by filing lawsuit).

Trade secret misappropriation, however, is not such a cause of action. The purpose of trade secret laws is to "prevent one person or business from profiting from a trade secret developed by another, because it would thus be acquiring a free competitive advantage." *Stork-Werkspoor*, 534 So.2d at 985. "The act was never intended to apply to discovery in civil actions" (*id.*). So

not allowing lawsuits over documents received in discovery and used only for litigation purposes, does not frustrate trade secret law.

Second, federal courts consider how connected the alleged misconduct is to the litigation and whether it's the type of conduct that the trial court traditionally handles. *Steffes*, 144 F.3d at 1076 ("judges are better able to supervise litigation tactics that proceed through the vehicle of the federal discovery rules"). Federal cases cited by MMP show that the privilege may not apply when the conduct is not an intimate part of the litigation. *See, e.g., Nix v. O'Malley*, 160 F.3d 343, 353 (6th Cir. 1998) ("the disclosures … exceed the boundaries of any attorney immunity because the disclosures were tangential to O'Malley's defense"); *Sorensen v. Polukoff*, No. 2:18-CV-67 TS-PMW, 2020 WL 1692815, at *3 (D. Utah Apr. 7, 2020) ("Plaintiff has alleged conduct that is unrelated to judicial proceedings and, thus, would not be protected by the privilege.")

Here, the challenged conduct was intimate to the litigation. The handling of a subpoena response is the very type of conduct that occurs under the district court's discovery supervision, under the Federal Rules of Civil Procedure, and under the terms of the Protective Order enforced by the court's contempt powers. Alleged trade secrets are almost always relevant

and exchanged under protective order in patent cases where engineering, customer, and financial information are relevant.[10] Many districts' standard protective orders contemplate the reality that confidential documents may be inadvertently produced without confidentiality designations.[11] Again, the Protective Order in the Patent case that covers the Settlement has an inadvertent disclosure term, (*see supra* p.44). When that happens, and it inevitably does, the orders simply require that the receiving party "make reasonable efforts to assure that the material is treated in accordance" with the corrected designation. (*See* footnote 11.) This is how Terves' counsel properly handled the matter: he clawed it back from his client's employees and marked it "AEO" under Protective Order.

The district court was correct to apply the privilege here.

---

[10] The district court's standard Protective Order for patent cases identifies "trade secrets" as evidence to be produced under "CONFIDENTIAL" or "ATTORNEYS EYES ONLY" designations. (*See* Protective Order ¶¶3-4, available at https://www.ohnd.uscourts.gov/sites/ohnd/files/PatentRules_AppendixA.pdf.)

[11] (*See* N.D. Ill. Standard Protective Order ¶6, available at https://www.ilnd.uscourts.gov/_assets/_news/General%20Order%2012-0018%20-%20Form%20LR26.2%20Model%20Confidentiality%20Order.pdf; N.D. Cal. Standard Protective Order ¶5.3, available at https://www.cand.uscourts.gov/wp-content/uploads/forms/model-protective-orders/CAND_StandardProtOrd.pdf.)

*iii. MMP's caselaw is distinguishable.*

The cases that MMP cites are distinguishable and do not support the propositions for which MMP cites them.

In *Sun Life*, the 11th Circuit rendered the unremarkable holding that you can sue someone for breaching a contract that forbid them from suing, and cited a hypothetical breach of a contractual promise not to disclose a trade secret as an example. 904 F.3d at 1218-20. Here, Bradley (not MH or Terves) allegedly breached a contractual obligation.

In *Merckle GmbH v. Johnson & Johnson*, the defendant Ortho allegedly obtained the trade secret outside of court and then used and disclosed the trade secret in a German patent case. 961 F. Supp. 721 (D.N.J. 1997). The case is inapplicable here because MMP does not allege that Terves or MH obtained the alleged trade secret outside of court, but rather in court.

In *Music Center*, the defendant did not raise, and the New York district court did not address, the litigation privilege defense, and the privilege has expanded since that 25-year-old decision. *Music Center S.N.C. v. Prestini Musical Instruments Corp.*, 874 F. Supp. 543 (E.D.N.Y. 1995). Moreover, plaintiff there alleged that defendants violated a protective order entered in one proceeding by disclosing and using those trade secrets in a different

proceeding and elsewhere. Whereas MMP merely sues on Terves' receipt of an unrestricted subpoena response in one active case.

In *New Wave Innovations, Inc. v. Greenberg*, plaintiff alleged that defendants had violated a stipulated protective order by disclosing an unpublished patent application number. 2015 WL 5118130 (S.D. Fla. Aug. 31, 2015). The district court viewed the claim as one for breach of contract, found plaintiff had not pleaded compensable damages, and dismissed. The case did not address trade secret misappropriation, what constitutes "improper means," or the litigation privilege. It is inapposite.

None of the cases cited by MMP say anything about a party's receipt of alleged trade secrets produced in discovery without restriction, and none of them hold the litigation privilege does not apply to that situation.

The Court should affirm dismissal and need not address the other appeal issues.

## II. The Court should either affirm or not reach the district court's order dissolving the seizure order.

The Court should not reach this issue if it affirms dismissal or if it finds that dissolutions of ex parte seizure orders are not reviewable on appeal.[12]

### A. Standard of Review

Because the DTSA required the district court to hold an evidentiary hearing and decide whether MMP meets proof elements required to maintain the seizure order, this Court should apply an abuse of discretion standard. *Cf. Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005) (abuse of discretion applies to preliminary injunction ruling).[13]

Under abuse of discretion, this Court "review[s] the district court's legal conclusions de novo and its factual findings for clear error." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003). This standard of review is

---

[12] An ex parte seizure order operates by surprise. Once the order is dissolved, the defendant knows about it and receives his items back, so there is no way to reinstate an "ex parte" seizure order and re-surprise defendant after appeal. Thus, the issue may be moot. *See Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (appeal is moot if court cannot grant effectual relief).

[13] Although Terves agrees with MMP that *procedurally* the same standard of review should apply as for preliminary injunction rulings, Terves disagrees "that dissolution amounts to the denial of injunctive relief" for the reasons explained in briefing on its motion to dismiss Appeal No. 20-3397.

"highly deferential" to the district court's decision. *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).

### B. This Court should affirm the dissolution of the seizure order.

#### 1. MMP's evidentiary burden at hearing.

At hearing, MMP had "the burden to prove the facts supporting the findings of fact and conclusions of law necessary to support the order." § 1836(b)(2)(F)(ii). This means that MMP needed to prove with "specific facts" each of the eight different proof elements identified in § 1836(b)(2)(A)(ii)(I)–(VIII).

#### 2. This Court should affirm on both grounds cited by the district court.

The district court cited two different elements that MMP failed to prove at hearing: (1) improper means, § 1836(b)(2)(A)(ii)(IV)(bb)(AA) and (BB); and (2) balance of harms, § 1836(b)(2)(A)(ii)(III). (12/19/19 Order, RE-15, PageID # 169-170.)

The district court's findings and conclusions reiterated those same two proof failures. (3/20/20 Order, RE-25, PageID # 383-84.)

### a. The district court correctly ruled that MMP failed to prove the balance of harms, § 1836(b)(2)(A)(ii)(III).

The district court was correct that MMP failed to prove that harm of dissolving the order outweighs the harm to the legitimate interests of Terves. § 1836(b)(2)(A)(ii)(III). That finding alone justifies dissolving the seizure order because MMP needed to prove all eight statutory factors at hearing to maintain the seizure. *See* § 1836(b)(2)(A)(ii)(I)–(VIII).

As to the balance of harms, the district court's Findings of Fact ¶¶ 7-11 confirm that dissolving the order would not harm MMP, while maintaining the order would harm Terves. (Opinion, RE-25, PageID #382-83.) The transcript from the hearing supports all of these findings, such that they cannot be clearly erroneous. (Tr. 35:23-36:3, 36:4-37:12, 43:4-14, 44:6-21, 45:3-46:20, 48:6-49:23, 54:15-55:6, RE-17, PageID #206-08, 214-20, 225-26.)

MMP's Brief does not show where at hearing it proved that its harm outweighed Terves' harm. Instead, MMP argues for pages that it proved a "likelihood of success on the merits." (Br. 45-51.) This argument is irrelevant because it is not one of the eight proof elements that MMP needed to satisfy to maintain the seizure order. *See* § 1836(b)(2)(A)(ii).

### b. The district court correctly ruled that MMP failed to prove that Terves used or conspired to use "improper means."

The DTSA also required MMP to prove that Terves had "(AA) misappropriated the trade secret of the applicant by improper means or (BB) conspired to use improper means to misappropriate the trade secret of the applicant." § 1836(b)(2)(A)(ii)(IV)(bb)(AA), (BB). The DTSA defines "improper means" as including "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic means or other means." § 1839(6). It excludes "other lawful means of acquisition" from the definition. *Id.*

The district court's Findings of Fact ¶¶ 2-5 confirm that MMP failed to prove improper means by Terves. (Opinion, RE-25, PageID #382-83.) The hearing transcript from the hearing supports all of these findings, such that they cannot be clearly erroneous. (*See supra* p.9-10, 18-19.)

MMP's Brief does not show where at hearing it proved improper means by Terves. MMP merely incorporates by reference Section C(2) of its brief. (Br. 51.) Incorporating by reference presents several problems. First, Section C(2) does not provide a single citation to the hearing transcript. The DTSA required MMP to prove "at hearing" that Terves misappropriated by

improper means, and MMP's lack of transcript citations admits that it failed to meet its burden of proof at hearing. § 1836(b)(2)(F)(ii). Second, the only "improper means" argument in Section C(2) is in footnote 4. MMP never raised that argument at hearing and, in fact, raised it for the first time here on appeal. Moreover, that alleged "misrepresentation" occurred <u>after</u> the alleged acquisition by Terves, so it could not possibly be an "improper means" by which Terves *acquired* the alleged secret. (*See supra* p.47-48.)

### 3. The Court may also affirm on three additional grounds supported by the record.

The record supports three additional grounds for affirmance.

First, MMP failed to show an immediate and irreparable injury will occur if such seizure is not maintained. § 1836(b)(2)(A)(ii)(II). The Settlement is marked "Attorneys' Eyes Only" under a Protective Order. Thus, the district court can enforce that order with its contempt powers if there is any threat of disclosure or use. So no threat of irreparable harm exists absent a seizure order.

Second, MMP failed to show that Terves would "evade, avoid, or otherwise not comply with" an injunction. § 1836(b)(2)(A)(ii)(I). Sherman testified that he would obey the Protective Order. (Tr. 46:25-47:3, RE-17,

PageID #46-47.) MMP offered no evidence at hearing that suggested, let alone proved, that Terves would evade or disobey a court order, especially when Terves has an active Patent Case before the same court.

Third, MMP failed to show that the information seized is "trade secret." § 1836(b)(2)(A)(ii)(IV)(aa). MMP testified that ███████████ ████████████████████ were the alleged trade secret. But MMP never showed how those three words disclose information "having independent economic value from not being generally known and not readily ascertainable." *See* 18 U.S.C. § 1839(3) (defining "trade secret").

This Court should affirm the dissolution of the seizure order on any or all of these grounds.

## III.   MMP's fourth appeal issue is not valid.

For its fourth appeal issue, MMP claims that the district court denied "further injunctive relief," but then cites conclusions of law that the district court entered with respect to the balance of harm factor for maintaining a seizure order. (Br. 51.) MMP acts as if it moved for a preliminary injunction under 18 U.S.C. § 1836(b)(3). It did not.

MMP did obtain a TRO with the original ex parte seizure order. But by vacating the seizure order, the district court also vacated the TRO contained

therein. (*See* Opinion, RE-25, PageID #381.) Or the TRO expired by its own terms, or by operation of Rule 65, within 14 days. (Order, RE-12, PageID #164.) Either way, the "denial of a motion for a temporary restraining order is not appealable." *Lumpkins-El v. Dept. of Corrections*, 3 Fed. Appx. 401 (6th Cir. 2001).

The district court did not preclude MMP from moving for a preliminary injunction. On the contrary, at hearing, the district judge told MMP twice that it "can submit something" on injunctive relief and Terves would have an opportunity to oppose. (Tr. 121:14-122:15, RE-17, PageID #121-22.) MMP never did.

Because MMP never moved for an injunction, Terves had no opportunity to offer evidence and arguments on the four injunction factors. To treat the ex parte seizure hearing as a preliminary injunction hearing when MMP never moved for a preliminary injunction, and Terves received less than 24 hour notice would be unfair and lack due process. Additional reasons for why this Court should not treat the district court's dissolution of the seizure order as a preliminary injunction ruling are provided in Terves' briefing on its motion to dismiss Appeal No. 20-3397.

This Court should reject MMP's fourth appeal issue.

## **Conclusion**

This Court should affirm the judgment below.


                                    Respectfully submitted,

Dated:  November 18, 2020            s/ Matthew J. Cavanagh
                                    David B. Cupar
                                    Matthew J. Cavanagh
                                    MCDONALD HOPKINS LLC
                                    600 Superior Ave., East, Ste. 2100
                                    Cleveland, Ohio 44114
                                    t 216.348.5400 │ f 216.348.5474
                                    dcupar@mcdonaldhopkins.com
                                    mcavanagh@mcdonaldhopkins.com

                                    *Counsel for*
                                    *Defendant-Appellee Terves, LLC*

<u>Certificate of Compliance</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) of 13,000 words because the brief contains 12,998 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in proportionally spaced typeface using 14-point font, Constantia in Microsoft Word 2016.

Dated:  November 18, 2020          s/ Matthew J. Cavanagh
                                                   *Counsel for Terves, LLC*

## Designation of Relevant Documents

| RE | PageID # | Date | Description |
|:---:|:---:|:---:|:---:|
| 1 | 1-105 | 12/4/19 | Complaint |
| 8 | 122-123 | 12/5/19 | Motion for ex parte seizure |
| 8-1 | 124-155 | 12/5/19 | Memo. in support |
| 12 | 163-166 | 12/18/19 | Seizure order |
| 15 | 169-170 | 12/19/19 | Order dissolving seizure order |
| 17 | 172-293 | 12/19/19 | Hearing transcript |
| 21 | 298 | 2/28/20 | Minutes |
| 25 | 380-384 | 3/20/20 | Findings and conclusions |
| 41 | 832-840 | 5/11/20 | MH MTD |
| 42 | 841 | 5/11/20 | Terves MTD |
| 45 | n/a | 5/12/2020 | [Sealed version] Terves memo in support of MTD |
| 46 | 936-964 | 5/12/20 | [Public version] Terves memo. in support of MTD |
| 46-2 | 995-1019 | 5/12/20 | Halliburton patent |
| 47 | 1027-1055 | 6/10/20 | [Public version] MMP memo. in opp. to MTD |
| 50 | n/a | 6/17/20 | [Sealed version] MMP memo. in opp. to MTD |
| 56 | 1102-1117 | 7/3/20 | [Public version] Terves reply re MTD |
| 58 | 1119-1127 | 7/14/20 | Dismissal opinion |
| 59 | 1128 | 7/14/20 | Judgment |
| 60 | n/a | 7/15/20 | [Sealed version] Terves reply re MTD |
| 61 | 1145-1147 | 7/21/20 | MMP notice of appeal |
| 66 | 1282-1289 | 9/9/20 | Order awarding fees |

## Appendix A

## Trade Secret Statute Correlation Table

| Page | DTSA | Ohio Trade Secret Act | Oklahoma Trade Secret Act |
|---|---|---|---|
| 32 | 18 U.S.C. § 1839(3)(B) | § 1333.61(D)(1) | 78 Okl. St. § 86(4)(a) |
| 34 | 18 U.S.C. § 1839(5) | § 1333.61(B) | 78 Okl. St. § 86(2) |
| 36 | 18 U.S.C. § 1839(5)(A) | § 1333.61(B)(1) | 78 Okl. St. § 86(2)(a) |
| 36 | Subpart (B) | § 1333.61(B)(2) | 78 Okl. St. § 86(2)(b) |
| 37 | 18 U.S.C. § 1839(6)(B). | N/A | N/A |
| 45 | 18 U.S.C. § 1839(5)(B)(ii)(III) | § 1333.61(B)(2)(b) | 78 Okl. St. § 86(2)(b)(2) |
| 46 | 18 U.S.C. § 1839(5)(B)(ii)(III) | § 1333.61(B)(2)(b) | 78 Okl. St. § 86(2)(b)(2) |
| 47 | 1839(5)(A) | § 1333.61(B)(1) | 78 Okl. St. § 86(2)(a) |

## Certificate of Service

I hereby certify that on November 18, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to appellants whose attorneys are all registered users of the CM/ECF system.

Dated: November 18, 2020          s/ Matthew J. Cavanagh
                                  *Counsel for Terves, LLC*